FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

00 MAR 21 PM 3: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| BETTY R. BALENTINE, | } |
| Plaintiff, | } |
| v. | } CASE NO. CV 98-B-0681-NW |
| REYNOLDS METALS COMPANY, | } |
| Defendant. | } |

ENTERED

MAR 21 2000

## MEMORANDUM OPINION

Currently before the court is defendant Reynolds Metals Company's ("defendant" or "Reynolds") Motion for Summary Judgment, filed on February 26, 1999. Plaintiff Betty Balentine ("plaintiff" or "Balentine") brought this action against defendant Reynolds alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., as well as breach of contract. Upon consideration of the evidence, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's Motion is due to be granted.

### I. FACTUAL SUMMARY

Reynolds employed plaintiff at its Alloys Plant ("Alloys") in Listerhill, Alabama, until June 27, 1996, when defendant terminated plaintiff in a Reduction-In-Force (RIF) affecting salaried employees. (Balentine Dep. at 17-18, 21, attached as Ex. A to Def.'s Evid. Sub.; Hester Aff. ¶¶ 7-8, attached as Ex. G to Def.'s Evid. Sub.) During plaintiff's tenure at Reynolds, she held various positions, including Shipping Specialty Clerk, Shipping Office Supervisor, and, ultimately, Shipping Load Planner. (Def.'s Ex. 1 to Balentine Dep., attached as Ex. B to Def.'s

32

Evid. Sub.) As of 1996, plaintiff had more years of service than the other three Load Planners, Diana Baugh ("Baugh"), Joyce Collum ("Collum"), and Dorothy Tibbs ("Tibbs"). (Balentine Dep. at 43-45.) Plaintiff's supervisors were Shipping Office Manager Kenise Rhodes ("Rhodes") and, since the Shipping Office was part of the Customer Service Department, Customer Service Manager Regan Ragland ("Ragland"). (*Id.* at 50-51.) Load Planners worked uniform schedules, processing paperwork, such as bills of lading and shipping tallies, on outgoing shipments. (*Id.* at 39-42; Ragland Dep. at 15, attached as Ex. E to Def.'s Evid. Sub.) "When [plaintiff] was there," she was considered a "a good performer." (Ragland Dep. at 19.)

During her employment at Reynolds, plaintiff suffered from a number of back-related medical conditions, some of which caused her to miss work. In 1992, plaintiff missed seven to eight weeks of work due to breast reduction surgery designed to alleviate back pain. (Balentine Dep. at 61-62, 67-68.) In 1993, plaintiff "popped" something in her back and was treated in an emergency room. (*Id.* at 64-65.) In 1995, plaintiff hurt her back when she slipped on her steps at home and was subsequently diagnosed with a pinched nerve in her lower back. (*Id.* at 74-76; Ray Dep. at 26, 29-30, attached as Ex. C to Def.'s Evid. Sub.) After missing seven weeks, plaintiff returned to work, but was restricted from lifting more than 10 pounds for four more weeks. (Balentine Dep. at 78-79; Ray Dep. at 32-33.)

In 1996, Dr. Roger Ray ("Ray") diagnosed plaintiff with mild lumbar stenosis[1] at L-4 with some degeneration of the L-4 disc. (Ray Dep. at 17.) Ray advised plaintiff to stay home for

---

[1] Mild lumbar stenosis is a "[n]arrowing of the spinal canal that holds the nerves at the lower portion of the back." (Ray Dep. at 19. )

2

at least ten days, but plaintiff did not follow Ray's advice. (Balentine Dep. at 115-16; Def.'s Ex. 5 to Balentine Dep., attached as Ex. B to Def.'s Evid. Sub.)

As part of their job duties, plaintiff and the other Load Planners were required to load the printer if it ran out of paper while they were using it. (Balentine Dep. at 99-100.) The printer ran out of computer paper and bar code labels approximately one time per day. (*Id.*) When obtaining new paper and labels from storage, Load Planners lifted boxes weighing 30 to 40 pounds. (*Id.* at 97.) During the four weeks in 1995 when she was restricted from lifting more than 10 pounds, plaintiff did not perform this function. (*Id.* at 81.) After the four weeks, plaintiff "definitely did not want to lift computer paper or bar code paper" and would ask other people to do it for her. (*Id.* at 94.) Plaintiff continued this practice throughout her employment, but is not aware of anyone criticizing her for it. (*Id.* at 103-04.)

Sometime in the 1990s,[2] plaintiff requested a new chair because the one she was using hurt her back. (*Id.* at 58-59.) Six to twelve months later, all four Load Planners received new chairs. (*Id.* at 59-60.) Rhodes admits that the new chairs weren't issued in response to plaintiff's request, but rather because "[o]ur chairs were old and worn out." (Rhodes Dep. at 15, attached as Ex. D to Def.'s Evid. Sub.) Plaintiff had no complaint about the chair she received. (Balentine Dep. at 60.)

On February 20, 1996, Rhodes completed plaintiff's final performance appraisal. (Rhodes Dep. at 22-23.) According to the appraisal, plaintiff needed improvement in the area of "dependability" because although she "is knowledgeable in all areas of the shipping

---

[2] This is the most definite time disclosed by the record.

3

department[,] . . . excessive absences due to back problems . . . are a problem." (Def.'s Ex. 6 to Balentine Dep, attached as Ex. B. to Def.'s Evid. Sub.) According to plaintiff, "dependability" referred to absenteeism, not job performance at work. (Balentine Dep. at 119.) Plaintiff testified that Rhodes stated that Ragland made her change the "dependability" rating to "needs improvement." (*Id.* at 122-23.)

Based on her length of employment at Reynolds, plaintiff was entitled to six months paid sick leave annually. (Balentine Dep. at 187-188; Def.'s Sick Leave Policy, attached as Ex. 12 to Pl.'s Evid. Sub.) During the period from January 1, 1995, to June 30, 1996, plaintiff used 436 hours of sick leave, compared to 103 by Baugh, 96 by Collum, and 42 by Tibbs. (Hester Aff. ¶ 10, attached as Ex. G to Def. Evid. Sub.) When a Load Planner was absent, the other Load Planners picked up his/her share of the work. (Balentine Dep. at 127.) The primary reason for plaintiff's absences was her back condition. (Rhodes Dep. at 27.)

When formulating the RIF defendant utilized a "needs assessment" group which recommended the elimination of certain job positions, including one Load Planner position. (Hester Dep. at 15, attached as Ex. F to Def.'s Evid. Sub.; Hester Aff. ¶ 6, attached as Ex. G to Def.'s Evid. Sub.) Plaintiff was selected to be reduced in force. Plaintiff testified that Rhodes said plaintiff was being reduced due to her "excessive use of sick leave." (Balentine Dep. at 179.)[3] According to plaintiff, she responded by saying "I have a back problem," to which Personnel Representative Larry Hester ("Hester") replied "we know all about your back

---

[3] At one point the plaintiff testified that "Kenise told me that, since you have a problem, since you have a disability, so to speak . . . ." (Balentine Dep. at 157.) She then agreed, however, that "she said, excessive sick leave." (*Id.* at 163.)

4

problem." (*Id.* at 163, 179-180.) Overall the reduction included 16 retirements[4] and 18 RIFs. (Ragland Dep. at 18; Alloys RIF and Retirement List, attached as Ex. 4 to Pl.'s Evid. Sub.)

## II. DISCUSSION

**A.    Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless,

---

[4] This does not include one disability retirement.

5

the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**B.     Plaintiff's ADA Claim**

The ADA prohibits "discriminat[ion] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to establish a prima facie case under the ADA, "a plaintiff must demonstrate that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as the result of his disability." *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996). If a plaintiff fails to do so, the employer is entitled to a judgment as a matter of law. *Id.* at 915.

*1.     Disability*

**a.     "Regarded As" Disabled**

Under the ADA, "disability" is defined as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. §§ 12102(2)(A)-(C). Thus, individuals who are "regarded as" having a disability are disabled within the meaning of the ADA. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, ___, 119 S. Ct. 2139, 2149 (1999) (citing 42 U.S.C. § 12102(2)(C)).

There are two ways in which an individual may invoke this statutory definition: (1) an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual

6

nonlimiting impairment substantially limits one or more major life activities. *Id.* at 2149-50. "In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* at 2150.

"[T]he term 'substantially limits' means '[u]nable to perform a major life activity that the average person in the general population can perform' or '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.'" *Hilburn v. Murata Electronics North America, Inc.*, 181 F. 3d 1220, 1226 (11th Cir. 1999) (quoting 29 C.F.R. §§ 1630.2(j)(1)(i), (ii) (1997)). "Major life activities are defined in the [EEOC] regulations as 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Id.* at 1226-27 (quoting 29 C.F.R. § 1630.2(i) (1997)).

In addressing the major life activity of working, "the [EEOC] defines 'substantially limits' as: 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, ___, 119 S. Ct. 2133, 2138 (1999) (quoting 29 C.F.R. § 1630.2(j)(3)(i) (1998)). "Thus, to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." *Id.*

7

Consequently, when a plaintiff claims that she is "regarded as" disabled as to the major life activity of working, the statutory phrase "substantially limits" requires the plaintiff to allege that she is regarded as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes. *Sutton*, 527 U.S. at ___, 119 S. Ct. at 2151; *see also Gordon*, 100 F.3d at 913 ("As with real impairments, courts have held that a perceived impairment must be substantially limiting and significant. In this context, then, a significant impairment is one that is viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks.").

In this case, plaintiff contends that she is disabled in that she is "regarded as" being unable to work due to excessive absences caused by her back condition. (Pl.'s Brief at 4-5.) Plaintiff presents four pieces of evidence that Reynolds regarded her as disabled: (1) she told Rhodes and Ragland about her back, (2) Rhodes commented on plaintiff's performance appraisal that excessive absences caused by back problems were a problem, (3) she requested a new chair because the one she was using aggravated her back, and (4) when she was terminated, Hester told her that "we know all about your back problem."

The court is of the opinion that viewed singly or together, these four facts establish that Reynolds regarded plaintiff as having a back problem that affected her attendance, but they fail to constitute evidence that she was perceived as being "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Murphy*, 527 U.S. at ___, 119 S.Ct. at 2138. In other words, the court is of the opinion that plaintiff has not produced evidence on which a reasonable jury could conclude that Reynolds "regarded" plaintiff as having an impairment that substantially limited her major life activities.

### b. **Actually Disabled or Record of Disability**

Although plaintiff does not contend that she was actually disabled or that Reynolds had a record of her alleged disability, the court will briefly address those alternative methods of proving "disability" under the ADA. As to actual disability, plaintiff has foreclosed such an argument by testifying that she was perfectly capable of performing her job, that she was qualified for most clerical or secretarial jobs, and that she does not believe her back condition limited her in any way from performing her job at Reynolds. (Balentine Dep. at 57-58, 111, 207); *see Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1327 (11th Cir. 1998) (holding that when plaintiff with back injury testified that he was fully capable of performing his job at all times during his employment, he could not be considered disabled under the ADA).

Similarly, an alleged record of an impairment must be of an impairment that substantially limits a major life activity. *Hilburn*, 181 F. 3d at 1228-29 (citing 29 C.F.R. § 1630.2(k)); *see also Dotson v. Electro-Wire Products, Inc.*, 890 F. Supp. 982, 990 (D. Kan. 1995). Dr. Ray's note in 1995 restricting plaintiff from lifting no more than 10 pounds for four weeks, and his note in 1996 restricting her from working for 10 days do not constitute a "record of impairment." *See, e.g., Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996) (doctor's note restricting claimant to a ten-pound lifting restriction did not establish a record of an impairment limiting a major life activity); *Dotson*, 890 F. Supp. at 990-91 (doctor's note restricting claimant from "hard physical labor rising [sic] her hands" did not satisfy claimant's burden of proof). Indeed, Ray stated that plaintiff did not need to be placed on any permanent restrictions. (Ray Dep. at 24). Consequently, the court is of the opinion that there is no record of a substantially limiting impairment as defined by the ADA.

### c. **Conclusion**

Therefore, since plaintiff does not have a physical or mental impairment that substantially limits one or more of her major life activities, has no record of such an impairment, and was not regarded as having such an impairment, she is not considered disabled under the ADA. Thus, the court is of the opinion that defendant's motion for summary judgment on the ADA claim is due to be granted.

### 2. *Subjected to Discrimination as a Result of a Disability*

Assuming, *arguendo*, that plaintiff could establish a disability, there is still no evidence that her alleged disability was the reason for her termination. *See Gordon*, 100 F. 3d at 910 (holding that plaintiff must show that "he was subjected to unlawful discrimination as the result of his disability"). Plaintiff contends that her selection for termination because of excessive absences due to her back condition constitutes "[d]irect evidence that plaintiff was terminated because of defendant's perceptions concerning her back." (Pl.'s Brief at 6.) In the alternative, plaintiff argues that the proffered reason, excessive absences, was pretext for discrimination based on disability. (Pl.'s Brief at 7-9.) The court will address these arguments in turn.

### a. **Direct evidence**

"In the context of an employment discrimination case, direct evidence is evidence that 'establishes discriminatory intent without inference or presumption.'" *Chockla v. Celebrity Cruise Lines, Inc.*, 47 F. Supp. 2d 1365, 1368 (S.D. Fla. 1999) (ADA case) (quoting *Earley v. Champion Int'l Corp.*, 907 F. 2d 1077, 1081 (11th Cir. 1990)). "Such evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'" *Smith v. Chrysler Corp.*, 155 F. 3d 799, 805 (6th Cir. 1998).

10

In this case, all parties agree that the proffered reason for plaintiff's selection for termination was excessive use of sick leave. There is no evidence that Rhodes, Ragland, Hester, or anybody else involved in the decision told plaintiff that she was selected because she is disabled. Indeed, most circuits that have considered the question have held that an employment decision based on the consequences of a disability is different than an employment decision based on a disability itself. *See, e.g., Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1198 (7th Cir. 1997) ("He was not discharged because of his disability. He was discharged because of a consequence of the disability -- his absence from work . . . ."); *Maddox v. University of Tennessee*, 62 F.3d 843, 847 (6th Cir. 1995) ("to hold otherwise, an employer would be forced to accommodate all behavior of an alcoholic which could in any way be related to the alcoholic's use of intoxicating beverages") (collecting cases). Based on this precedent, and the lack of any clear statement by Reynolds management that plaintiff was terminated due to her alleged disability, the court is of the opinion that plaintiff's termination was not "as a result of" the alleged disability, but rather the consequences of the disability.

### b.     Pretext

Plaintiff further contends that the "excessive sick leave" reason was pretext for discrimination based on disability. As evidence of such pretext, plaintiff argues that (1) she did not exceed her allotted amount of sick leave; (2) Reynolds changed her performance appraisal (to "needs improvement" in the area of dependability) in order to set her up to be reduced; and (3) statistics show that the RIF was designed to purge disabled employees. (Pl.'s Brief at 7-10.)

First, even if plaintiff was entitled to six months paid sick leave per year and never exceeded that amount, that fact does not show pretext. There is no evidence in the record that

Reynolds selected plaintiff because she violated company policy. Instead, the record shows that Reynolds selected plaintiff because she had been absent more than any other Load Planner. Consequently, the court is of the opinion that Reynolds's proffered reason is not pretextual. *See Jackson v. Veterans Administration*, 22 F.3d 277, 279-80 (11th Cir. 1994) (defendant conceded that plaintiff had used only the sick leave time allotted to him, but the fact he had irregular attendance provided legitimate reason for termination) (Rehabilitation Act case).

Second, plaintiff cannot logically argue that the performance appraisal was a "set up" for subsequent selection for termination. The performance appraisal was prepared on February 20, 1996. (Def.'s Ex. 6 to Balentine Dep., attached as Ex. B to Def.'s Evid. Sub.) The RIF reorganization began on April 12, 1996. (Def.'s Ex. 13 to Balentine Dep., attached as Ex. B to Def.'s Evid. Sub.). The court cannot reasonably infer that a reorganization begun in April influenced a February appraisal. *See Brown*, 848 F.2d at 1540 n.12 (holding that nonmovant is to be given the benefit of every reasonable inference).

Third, there is not enough valid statistical evidence in the record to raise an issue of fact regarding the number of allegedly disabled employees terminated during the RIF. Plaintiff relies on testimony as to the medical condition of other persons that may or may not be accurate.[5] Plaintiff does not offer any evidence from which it could be reasonably inferred that the ailments in question constituted ADA-protected disabilities. Moreover, plaintiff does not offer any evidence from which it could be reasonably inferred that the percentage of reduced employees

---

[5] For example, plaintiff argues that a plaintiff in another of the lawsuits had a "herniated disc," (Pl.'s Brief at 6), although plaintiff's deposition testimony was that the person in question "had hernia surgery," (Balentine Dep. at 195).

with alleged disabilities was disproportionate to the percentage of persons in the salaried employee population with alleged disabilities. *See Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 963 (11th Cir. 1997) ("Statistics without an analytic foundation are virtually meaningless.").

Consequently, the court is of the opinion that plaintiff has failed to put forth sufficient evidence on which a reasonable jury could conclude that Reynolds's articulated reason for selecting plaintiff for termination during the reduction-in-force was pretext for discrimination based on disability.[6]

### C.    Plaintiff's Breach of Contract Claim

In her Amended Complaint, plaintiff asserts a state law claim for breach of contract. (Pl.'s Am. to Compl. ¶¶ 17-21.) In support of this claim, plaintiff contends that "[d]efendant violated its own affirmative action policy" because "[d]efendant's own federally-mandated affirmative action policy required it to favorably consider disability in its decisions concerning layoff." (Pl.'s Brief at 10-12.) Reynolds Affirmative Action Program (AAP) provides in relevant part:

> **What is Affirmative Action?**
>
> It is Reynolds Metals Company's commitment to take positive measures to assure equal opportunity for all applicants for employment and our employees in the area of:
> Recruiting         Benefits
> Hiring             Training/Education

---

[6] Because the court is of the opinion that plaintiff is not disabled, it need not reach her contention that defendant failed to accommodate her by not allowing her to miss work, provide her with a new chair in a timely manner, and by not removing the job duty of lifting computer paper and bar code labels.

        Promotions        Recreation Programs
        Compensation     Layoff and Recall Practices
        All Other Terms and Conditions of Employment.

        These will be administered without regard to race, religion, color,
        national origin, sex, age, disability or veteran status.

(Reynolds's Affirmative Action Statement, attached as Ex 15 to Pl.'s Evid. Sub.) (bold in original.)

      Section 503 of the Rehabilitation Act of 1973 requires federal contractors to "take affirmative action to employ and advance in employment qualified individuals with disabilities." 29 U.S.C. § 793(a). Section 503(b) also provides for enforcement of the Act through the filing of charges with the Department of Labor. *Id.* at § 793(b). Section 503(b)'s enforcement procedures are exclusive and thus preclude the assertion of complaints in private litigation. *Howard v. Uniroyal, Inc.*, 719 F.2d 1552, 1562 (11th Cir. 1983) ("[T]he remedy provided in precise detail by Congress in enacting section 503(b) was intended to be the plaintiff's sole means of enforcing the affirmative action clause contained in the contract between his employer and the federal government."). Based on Eleventh Circuit precedent, therefore, the court is of the opinion that plaintiff's breach of contract claim is precluded by the procedure established by Congress in § 503(b).[7]

      In the alternative, plaintiff's breach of contract claim cannot be maintained under Alabama state law. First, the prerequisites to a contract of employment under Alabama law include a "clear and unequivocal offer" communicated to the plaintiff. *Hoffman-LaRoche, Inc. v.*

---

      [7] *Howard* preceded the implementation of the ADA and was based on a third-party beneficiary cause of action rather than the direct breach of contract cause of action alleged here. Nevertheless, the rationale of the decision is applicable to the claim in this case.

*Campbell*, 512 So. 2d 725, 728 (Ala. 1987). There is no evidence that plaintiff was even aware of the AAP, having testified that "[t]he one thing I remember seeing is this great big sign. I think it says, we are an EEOC company, something to that effect." (Balentine Dep. at 209-210); *see Wyatt v. BellSouth, Inc.*, 998 F.Supp. 1303, 1310 (M.D. Ala. 1998) ("Wyatt has also failed to produce sufficient evidence on the second prong of the *Hoffman-La Roche* test which requires a showing that the offer was communicated to the employee . . . ."). Second, plaintiff provided no evidence, nor did she contend, that she provided "substantial consideration for the contract separate from the services to be rendered." *Birmingham-Jefferson County Transit Authority v. Arvan*, 669 So. 2d 825, 827 (Ala. 1995). Consequently, the court is of the opinion that plaintiff's breach of contract claim cannot be maintained under Alabama state law.

### III. CONCLUSION

Based on the foregoing, the court is of the opinion that the Motion for Summary Judgment filed by defendant is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 21st day of March, 2000.

*/s/ Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge

15